**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LILLIE LOUISE LUCAS, *et al.*,<br><br>Defendants. | Case No. 4:26-cr-75 |

**DEFENDANT LILLIE LOUISE LUCAS'S MOTION FOR SANCTIONS FOR EXTRAJUDICIAL STATEMENTS THAT VIOLATE LOCAL RULE 57.1**

Defendant Senator L. Louise Lucas, by undersigned counsel, respectfully moves this Court, pursuant to Local Criminal Rule 57.1(C) and the Court's inherent authority to supervise criminal proceedings and ensure a fair trial, for an order (1) finding that Attorney General Todd Blanche, FBI Director Kash Patel, and First Assistant United States Attorney Theophani Stamos violated Local Criminal Rule 57.1(C) through the extrajudicial statements they made at the October 22, 2026 press conference announcing the Indictment in this case, and imposing appropriate sanctions for those violations; (2) prohibiting further extrajudicial statements by counsel and associated law enforcement personnel concerning Senator Lucas's guilt, the merits of the case, or the evidence during the pendency of this case; (3) directing such curative measures as the Court deems necessary to protect the venire, including an expanded voir dire; (4) referring the violations for appropriate disciplinary or contempt proceedings; and (5) granting the additional relief described in Part VI below, including removal of the press conference video from public DOJ sites, preservation and production of related communications and analytics, and a certification of compliance. The grounds for this Motion are set forth with particularity in the incorporated

Memorandum of Law below, and in the supporting Declaration of Anthony M. Capozzolo and the attached exhibits.

## MEMORANDUM IN SUPPORT

## INTRODUCTION

Courts in this District have established clear, strict and well-understood rules about public statements made by lawyers and law enforcement personnel involved in pending criminal cases. Those rules are designed to avoid infringements on a defendant's fundamental right to a fair trial. The statements by and actions of the Attorney General, the Director of the FBI and the First Assistant United States Attorney for the Eastern District of Virginia knowingly violated this Court's local rules on public comments on pending criminal matters and maximized the extent to which the public at large would be exposed to their prejudicial comments.

## RELEVANT FACTS

At approximately 9:36 a.m. on Thursday October 22, 2026, the Department of Justice posted on its X account (formerly Twitter) that Attorney General Todd Blanche and FBI Director Kash Patel (identified by their username/handle @ToddBlanche and @FBIDirectorKash) would be making an announcement about a "Significant Law Enforcement Action" at 10:00 a.m. that morning. Exh. A at 1 (DOJ X.com post from Oct. 22, 2026). As of November 11, 2026, that post alone has garnered over 165,000 views. *Id*. The post indicated that the announcement would be broadcast live at the Justice.gov/Live website. At 10:39 a.m., the message was re-posted along with a video of the Attorney General's nationwide announcement. Id. at 2. That post has received 197,000 views. Later, the public would learn that the announcement was meant to bring national attention to the arrest of Senator Lucas, members of her family and the other defendants in this case.

Earlier that morning, Senator Lucas who was represented by counsel with whom the Government had been communicating, was contacted directly by the FBI and ordered to surrender by 9:00 a.m. at the United States Marshal's office in Norfolk, VA. The early-morning surprise arrest of 82-year-old Senator Lucas was particularly shocking as the existence of the federal investigation was well known to Senator Lucas, her counsel, and the public at large. Federal authorities had previously executed a search warrant at two locations connected to Senator Lucas, and that action had received significant local and national publicity.[1] [2] The unnoticed arrests were all the more surprising because the federal government evidently did not believe there was a risk of flight or threat to the community as Senato Lucas and most of the other defendants were released on personal recognizance bonds at their initial appearance later that day.[3]

Sometime after 10:00 a.m., well before Senator Lucas or any of the defendants had made their initial appearance, Attorney General Todd Blanche, FBI Director Kash Patel and First Assistant United States Attorney Theophani Stamos appeared inside the U.S. Attorney's Office in Norfolk with each making statements to the national media. A partial transcript of the press conference is attached. Exh. B.[4]

---

[1] It is notable that the arrests occurred only thirteen days before the national mid-term elections.

[2] The publicity about this case was also amplified, in part, because a FOX news reporter and camera crew were already in place when law enforcement were exiting their vehicles to execute a search warrant, generating video that became the subject of significant local and national television coverage., including video of FBI in military-style fatigues and long rifles invading the Lucas Lodge and Cannabis Outlet. https://www.youtube.com/watch?v=puUlBs2fpjc&t=27s . There is no public reporting that the DOJ is investigating who in the government leaked the fact that the search warrant was being executed that morning.

[3] Defendant Carl Upton Jr. was released on a $25,000 unsecured bond (Dkt. No. 83), similar to the conditions of release on docket 26-cr-00033, a matter that was superseded by the Indictment filed in this matter.

[4] References to the transcript of the press conference will be denoted as "Tr." and the attached transcript omits the end of the press conference during a Question-and-Answer session with reporters that is not relevant to the issues raised in this motion.

During that press conference, the Attorney General made the following remarks relevant to this motion: [5]

Comment 1: The entire-- the Department of Justice intends to prove that Senator Lucas violated the trust of the people of Portsmouth and Chesapeake, Virginia, and of her state Senate colleagues. Through her elected office, Senator Lucas has been a public servant of the people of Virginia. Her first duty should've been looking out for her constituents before herself. (Tr. at 1).

Comment 2: But the charges listed in the Indictment reflect the alleged behavior of a public servant who put her own financial interests before the people she was elected to serve. (Tr. at 1).

Comment 3: We're here today because of facts and evidence which led to this investigation to begin many years ago, and facts and evidence that led to the grand jury to indict Senator Lucas and her alleged co-conspirators. (Tr. at 2).

The FBI Director made the following remarks:

Comment 4: As alleged by the Attorney General, Ms. Lucas, for the last nearly five years, accumulated nearly $5 million in ill-gotten gains through her criminal enterprise. (Tr. at 2).

Comment 5: During her time as Virginia State Senator, instead of enforcing the law, she was actually breaking the law, as alleged in the Indictment, and then using her position of power and public trust to deflect and defend against her own criminal enterprise. Truly the epitome of hypocrisy for a public official. (Tr. at 2).

Comment 6: Ms. Lucas, on January 24th 2022, posted on social media, "I'm a 78-year-old grandma who legalized pot and now has her own cannabis store, and I'm the last thing standing between the GOP and total control of Virginia. That's worth an RT," end quote. While she was posting these things, and the reason I highlighted it, is because during this time period, her and her co-conspirators continued her criminal conspiracy to enrich themselves and break the public trust. (Tr. at 2).

The First Assistant U.S. Attorney made the following remarks:

Comment 7: The charges include relatives and associates of that elected official who allegedly conspired to cash in on beneficial legislation, access, and influence. The charges are not limited to public corruption, but also involve public safety. We see time and again the dangers of the presence and use of firearms in conjunction with drug trafficking. (Tr. at 3).

---

[5] Underlined portions of the transcript are emphasis added.

After their prepared remarks, the Attorney General chose to engage in a question and answer with reporters about the content of the Indictment and the circumstances surrounding the prosecution leading him to vouch for the propriety of the investigation:

Comment 8: And the forty-five or so page Indictment lays out a series of allegations that the grand jury heard. And, and that's, I, I've read the Indictment. I read it this morning. Um, it's not, we, we don't do political paybacks. That's not ... This investigation has been going on long before, um, the US attorney, the first assistant started her job, long before I started my job here, and long before Director Patel, um, became the FBI director. (Tr. at 4).

It started long before President Trump was reelected. So I don't ... I'm not gonna ... I, I can't get into a war of words with, with a attorney for a, a charged defendant. But just to unequivocally say it's completely false to say that this ... And again, don't trust me. Read the Indictment. (Tr. at 4).

This press conference was highly unusual in that the Attorney General and the Director of the FBI were both present. As a result, the press conference received significantly more media coverage than a simple press release or a press conference attended only by the local First Assistant U.S. Attorney. A public source search reveals many other public officials with more national prominence and notoriety than State Senator Lucas whose indictments were *not* announced at a national press conference by the U.S. Attorney General or the Director of the FBI, including Congressman George Santos, Congressman William Jefferson, Congressman Duncan Hunter, Former New Orleans Mayor Ray Nagin, Senator Robert Menendez, and New York City Mayor Eric Adams.[6]

[6] The only instances identified where the Attorney General and FBI Director personally appeared at a press conference to announce an indictment of a public official were when Attorney General John Ashcroft announced the indictment of former governor of Illinois George Ryan and when Attorney General Eric Holder personally conducted a DOJ press conference announcing a sweeping corruption case against 133 people including 90 law enforcement officers in Puerto Rico – a case that DOJ at the time described as the largest police corruption investigation in FBI history.

The October 22nd press conference received intense local and national publicity. It was covered by the national broadcast media networks—CBS, NBC and ABC—and major cable news networks, CNN, MS NOW, FOX and others. Exh. C (links to media sites providing coverage of the press conference). Local coverage was also extensive. Exh. D. (links to local Virginia media coverage.

The Department of Justice press release issued the same day (and posted on the DOJ website) reiterated many of the same comments highlighted above from the press conference. Exh. E. And a post on DOJ's X account after the press conference included a quote that highlighted the language described in Comment 2 above. Exh. F That post now has over 50,000 views.

A review of some of the comments on DOJ's X.com posts related to the press conference on October 22 include those by individuals who appear to have now prejudged the guilt of the Senator, such that it appears that the comments made during the press conference may have had their intended effect – with many commentors suggesting that Senator Lucas was guilty of the crimes in the Indictment.[7] It is impossible to say if or how many of such posts are by individuals who may be called as jurors in this case.

The last page of the Indictment uncommonly bears the name of the Attorney General Todd Blanche in addition to that of First Assistant United States Attorney Stamos. A review of recent publicly filed indictments in the Eastern District of Virginia reveals that they do not ordinarily bear

[7] As examples – one comment stated "Bring back public executions and stream them live. We have t[he] right to expect justice from these criminals." Another commented, "Abuse of political power to acquire, distribute, and launder the proceeds of illegal narcotics as to influence others in high political positions… story book case." A third commenter simply stated "to Gitmo," as an apparent reference to the notorious detention center for terrorists in Cuba. And as a final example, another person commented "Throw away the key. Egregious, disgusting criminal abuse of power."

the name of the Attorney General of the United States in the signature block but rather only the name of First Assistant United States Attorney Stamos.[8]

While the press release issued by the Department of Justice included the standard language indicating that an indictment is merely an allegation and that defendants are presumed innocent until proven guilty beyond a reasonable doubt in a court of law, no such statement was made by the Attorney General, the FBI Director or the First Assistant United States Attorney during their press conference, and no such disclaimer was provided on any of the social media sites where the press conference was carried live or linked to by the Department of Justice or FBI.

In 2026, but prior to the unsealing of this Indictment, Senator Lucas had received significant press coverage as the seniormost state legislator in Virginia who spearheaded an electoral, legislative and political effort to redraw federal congressional districts in Virginia in response to previous redistricting efforts by Republican state legislators in other states like Texas. *A Local Judge. A Brash 82-Year-Old Senator. State Leaders Have Decided Redistricting*, NPR Ill. (Apr. 18, 2026), https://www.nprillinois.org/2026-04-18/a-local-judge-a-brash-82-year-old-senator-state-leaders-have-decided-redistricting. When the initial ballot measure was approved by voters, Republican President Donald Trump, without evidence, attacked the redistricting election, drawing national coverage for his comments. Brady Knox, *Trump Calls Virginia Redistricting Election 'RIGGED,' Hopes Courts Reverse Maps*, Colo. Pol. (Apr. 22, 2026), https://www.coloradopolitics.com/2026/04/22/trump-calls-virginia-redistricting-election-rigged-hopes-courts-reverse-maps/.

---

[8] Other recent high-profile indictments of public officials in other districts also do not contain the U.S. Attorney General's name in the signature block. These include the cases against Governor Rod Blagojevich in 2009 (Illinois); New York Assembly Speaker Sheldon Silver in 2015 (New York); House Representative Chaka Fattah in 2015 (Pennsylvania); Senator Robert Menendez in 2024 (New Jersey); and New York City Mayor Eric Adams in 2024 (New York).

## ARGUMENT

The Government chose to announce this post-indictment prosecution not through its public charging document, but through a televised press conference, broadcast over the internet, during which the two most senior law enforcement officials in the country, and the lead federal law enforcement official in this District, declared Senator Lucas guilty. Local Criminal Rule 57.1 forbids precisely that. The Attorney General, the FBI Director, and the First Assistant United States Attorney each made extrajudicial statements opining on Senator Lucas's guilt and the merits of the case at the inception and during the pendency of this prosecution. This is the core conduct the Rule prohibits. This is the type of conduct for which this Court has imposed criminal-contempt sanctions. The Court should sanction these violations and enter curative relief to protect Senator Lucas's right to a fair trial by an impartial jury and to deter such conduct in the future.

### I. Local Criminal Rule 57.1 Prohibits Post-indictment Extrajudicial Statements Opining on Guilt or the Merits, and this Court Enforces this Rule through its Contempt Power.

From "the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment … until the termination of trial," Local Criminal Rule 57.1(C) bars "a lawyer, law firm, or law enforcement personnel associated with the prosecution or defense" from releasing "any extrajudicial statement which a reasonable person would expect to be further disseminated by any means of public communication" if the statement concerns, among other enumerated subjects, "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case." E.D. Va. Loc. Crim. R. 57.1(C).

The Rule is settled, constitutional, and enforceable. This District previously upheld a legal challenge to Rule 57, holding that its "reasonable likelihood" standard is "narrowly tailored to achieve precisely the objectives to which the Supreme Court in *Gentile v. State Bar of Nevada*,

501 U.S. 1030 (1991) held that such restrictions properly may be directed." *In re Morrissey*, 996 F. Supp. 530, 535-39 (E.D. Va. 1998). The Fourth Circuit affirmed, holding the Rule facially valid and confirming that it is enforced through criminal contempt. In that case, a private defense counsel was "convicted of two counts of criminal contempt for violating Local Criminal Rule 57" and "sentenced to ninety days imprisonment and three years probation," with a two-year suspension from practice in this District. *In re Morrissey*, 168 F.3d 134, 137 (4th Cir. 1999). The violations in *Morrissey* arose under the same subsections at issue here — statements going to "the expression of a lawyer in the case about the merits of the case." *Id.* at 535–539. The rule also prohibits discussing the "character or reputation of the accused," Loc. Crim. R. 57.1(C)(1), or "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case," Loc. Crim. R. 57.1(C)(6).

The Rule targets two specific evils the Supreme Court identified: 1) comments "likely to influence the actual outcome of the trial" and 2) comments "likely to prejudice the jury venire even if an untainted panel can be found." *Id.* Statements of guilt by the prosecution are the paradigm of both. An official's standing as a senior prosecutor is not a defense, a license to violate the Rule – <u>in fact it is an aggravating factor</u>. Senior prosecutorial officials at a nationally broadcast press conference have no "one-time pass, let alone a blank check, to make any statements they might like about a case that has not reached its conclusion," because "prosecutor statements are more likely to influence prospective jurors" than those of ordinary advocates. *United States v. Smith*, 985 F. Supp. 2d 506, 541–542 (S.D.N.Y. 2013) (In a similar context to E.D. Va.'s local criminal rule, the S.D.N.Y. district court addressing the particular impact that a prosecutor's public statements can have on public opinion about an accused's guilt). It "is essential that prosecutors respect both the power of their words and their office, and ensure that their public comments are

carefully tailored solely to further valid law enforcement interests and to steer far clear of violating a defendant's fundamental right to a fair trial." *Id*. at 541 (citation omitted).

**II. The Attorney General's prepared statements violated Local Rule 57.1(C).**

The Attorney General, a lawyer "associated with the prosecution," is bound by Rule 57.1(C) directly. Attorney General Blanche told the press that the Department "intends to prove that Senator Lucas violated the trust of the people of Portsmouth and Chesapeake, Virginia, and of her state Senate colleagues," (Tr. at 1) and that "[h]er first duty should've been looking out for her constituents before herself" (Tr. at 1). Attorney General Blanche added that the charges "reflect the alleged behavior of a public servant who put her own financial interests before the people she was elected to serve." (Tr. at 1). Though couched in places as what the Department "intends to prove," the operative assertions — that Senator Lucas "violated the trust" and subordinated her constituents to her own financial interest — are opinions on guilt and the merits. The prefatory "alleged" does not cure the prohibited import; the Rule bars the opinion, and the prohibition turns on the reasonable likelihood of prejudice to the venire, not on the speaker's disclaimer. *In re Morrissey*, 996 F. Supp. 530, 535–539 (E.D. Va. 1998) Coming from the Attorney General of the United States, these statements carry heightened capacity to influence prospective jurors. As the Court in *United States v. Smith*, 985 F. Supp. 2d 506, 541–542 (S.D.N.Y. 2013) stated about the responsibility of senior prosecutorial authorities:

> However, none of this discussion should be interpreted as giving senior prosecutorial officials a one-time pass, let alone a blank check, to make any statements they might like about a case that has not reached its conclusion. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). As such, the prosecutor's interest "is not that [he] shall win a case, but that justice shall be done." *Id*. Because of the unique role played by prosecutors in our

> justice system, "[t]he prevailing view is that prosecutor statements are more likely to influence prospective jurors," than those of other advocates. Scott M. Matheson, Jr., *The Prosecutor, the Press, and Free Speech*, 58 Fordham L.Rev. 865, 868 (1990); *see also* Lipman, 47 Am.Crim. L.Rev. at 1533 ("Statements by prosecuting attorneys, in particular, have increased likelihood to influence the public because the attorneys speak with the inherent authority of the government." (citation and internal quotation marks omitted)).

The Attorney General then gratuitously vouched for the criminal investigation that resulted in the Indictment. This was a tell – Attorney General Blanche well knew that the timing of the public unsealing of this Indictment, weeks before the national mid-term elections against a person whose recent political activity on redistricting had drawn the ire of the President, was going to be questioned. However, rather than follow the Local Rule and refrain from commenting on such matters, the Attorney General defensively vouched for the government's investigation when he proclaimed that the "facts and evidence which led to this investigation to begin many years ago, and facts and evidence that led to the grand jury to indict Senator Lucas and her alleged co-conspirators." (Tr. at 2). There is no question that the Attorney General was vouching for the political motives of the investigation; suggesting to the viewers that they should believe that Senator Lucas was guilty simply because the investigation was begun during a prior administration.

Attorney General Blanche was correct because when he began the question and answer session, the first reporter asked whether the Indictment was "political payback,"[9] to which the Attorney General again vouched for the investigation stating that the "investigation has been going on long before, um, the US attorney, the first assistant started her job, long before I started my job

[9] We note that the reporter prefaced the question by saying "her attorney" (presumably an attorney for Senator Lucas) said that the Indictment was political payback. We take this footnote to clarify that no attorney that is part of the Senator's defense team made such a statement.

here, and long before Director Patel, um, became the FBI director. It started long before President Trump was reelected." (Tr. at 4). This again is nothing more than gratuitous vouching for the criminal investigation and the guilt of Senator Lucas, something any trial lawyer would be prohibited from doing even at the trial of a criminal defendant. *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997) ("It is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses in arguments to the jury."); *United States v. Sawyer*, 347 F.2d 372, 373 (4th Cir. 1965) (personal vouching or suggestion of knowledge of facts beyond those shown to the jury is "strictly forbidden."); *see also United States v. Young*, 105 S.Ct. 1038, (1985) (Court endorsing the view that "[i]t is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." (quoting the ABA Standards for Criminal Justice 3–5.8(b)(2d ed. 1980)).

### III. The FBI Director's Statements Declaring Senator Lucas Guilty are Clear Violations of Rule 57.1(C)(6).

Director Patel made the most flagrant statements. The Director told the assembled press that Senator Lucas "accumulated nearly $5 million in ill-gotten gains through her criminal enterprise" (Tr. at 2); that she was "[t]ruly the epitome of hypocrisy for a public official" (Tr. at 2); and that "her and her co-conspirators continued her criminal conspiracy to enrich themselves and break the public trust" (Tr. at 2). These are not recitations of charges. Each states the central contested facts — that Senator Lucas ran a "criminal enterprise," took "ill-gotten gains," and committed a "criminal conspiracy" — as established truth. That is an "opinion as to the accused's guilt … [and] as to the merits of the case," squarely within Rule 57.1(C)(6).

Strikingly, the statement that Senator Lucas accumulated nearly $5 million in ill-gotten gains, is not even a fact alleged in the Indictment. Neither DOJ's press release nor the Indictment's forfeiture allegations suggest a quantity of alleged "ill-gotten" gains of nearly $5 million.

Obviously, the intent of this statement was to inflate the seriousness of the criminal conduct alleged in the Indictment. That is precisely the type of statement the Local Criminal Rule prohibits. For example, if an indictment only alleged an assault and a prosecutor made a public statement that the victim nearly died of life-threatening gruesome injuries caused by the defendant, that would patently violate Local Criminal Rule 57.1(C). Here, the circumstances are analogous – an obvious way to suggest that a drug conspiracy is more serious is to exaggerate the total quantity of drugs sold or the amount of money the organization has made. This is particularly egregious when such information is not contained in the indictment, the only publicly released information about the case at that time.

Director Patel is "law enforcement personnel associated with the prosecution," and the Rule binds him by its terms. Though he is currently admitted as an attorney in New York State—and a former DOJ prosecutor himself—his current role as a non-lawyer does not diminish the prejudice. The Fourth Circuit has recognized that such statements inflict precisely the harm the Rule guards against — they are "likely to influence the actual outcome of the trial" and to "prejudice the jury venire." *In re Morrissey*, 996 F. Supp. 530, 535–539 (E.D. Va. 1998). Declaring a defendant guilty of a "criminal enterprise" on the day her prosecution is announced is reasonably likely to interfere with the empaneling of an impartial jury in this District and introducing facts to amplify the seriousness of the crime by introducing allegations not contained in the Indictment obviously exceeds all proper bounds of the Local Criminal Rule.

**IV. The United States Attorney's Office compounded the prejudice by casting Senator Lucas as a danger to public safety.**

The First Assistant United States Attorney, also a lawyer bound by the Rule, told the press that the charges "involve public safety" and invoked "the dangers of the presence and use of firearms in conjunction with drug trafficking." That framing goes well beyond neutrally reciting

the counts; it holds Senator Lucas out as a present danger to the community before any evidence has been tested at trial. Such community-danger rhetoric is reasonably likely to prejudice the venire — the second evil the Rule targets. *In re Morrissey*, 996 F. Supp. at 535–539. Notably, there is no allegation in the Indictment that any firearms were ever fired or used in a manner inconsistent with what they were – lawfully owned and possessed by security guards at a store that does retail cash transactions.[10] It is simply unacceptable to suggest that anything in the Indictment is consistent with the First Assistant's comments and, as a result, they violate Local Rule 57.1(C).

## V. The Attorney General is also independently responsible for the FBI Director's statements made at his side and under his supervision.

In addition to being responsible for his own comments, the Attorney General cannot disclaim the Director's statements. He convened the joint announcement, handed the podium to the Director — "I will hand it over to Director Patel" — and then stood silent as the Director declared Senator Lucas guilty of a "criminal enterprise" and made his other improper comments. Two independent principles make the Attorney General responsible.

First, the professional-conduct rules impose an affirmative duty on the Attorney General to police such conduct. Virginia Rule of Professional Conduct 3.6(b) commands that a lawyer "shall exercise reasonable care to prevent employees and associates from making an extrajudicial statement that the lawyer would be prohibited from making." Va. Sup. Ct. R. PT 6 2 RPC 3.6. And Virginia Rule 5.3(c)(2) makes a supervising lawyer responsible for a nonlawyer's rule-violating conduct where the lawyer "has managerial authority … or has direct supervisory authority over the person, and knows or should have known of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." Va. Sup. Ct. R. PT 6 2 RPC

---

[10] We note that the government did not charge any defendants with possession of a weapon in circumstances where a person was not lawfully in possession of any weapon, such as those enumerated in 18 U.S.C. § 922(g).

5.3. The Attorney General heard the Director's statements as they were made, had every opportunity to interject or disavow them, and he did neither. It is also professional misconduct to violate the Rules "through the acts of another." Va. Sup. Ct. R. PT 6 2 RPC 8.4.

The supervisory predicate is beyond dispute. All functions of DOJ agencies and officers "are vested in the Attorney General," 28 U.S.C.A. § 509, and the FBI Director exercises his authority "subject to the general supervision and direction of the Attorney General." 28 C.F.R. § 0.85. The Attorney General thus held the authority — and, under Rules 3.6(b) and 5.3(c)(2), the duty — to prevent or curtail the Director's statements. His failure to do so, at an event he controlled, is itself sanctionable. Lawyers are "officers of the court, subject to reprimand and the imposition of other disciplinary sanctions for the violations of rules to which non-lawyers are not subject." *Hirschkop v. Snead*, 594 F.2d 356, 370 (4th Cir. 1979). The Attorney General's heightened duty as an officer of this Court is the premise of his responsibility, not an escape from it.

In addition, the press conference itself gives the appearance of a highly coordinated performance by the three separate speakers. First, the fact that each set of statements did not repeat the subject matter of the others' comments strongly suggest that the prepared remarks were exchanged by the participants (or their staff) to coordinate the remarks. Second, it is commonplace for prosecutors and law enforcement communications staff to exchange such information in preparation for a press conference among parties to the same investigation. Third, from the video of the press conference it appeared that each of the speakers read from prepared, typed notes. *See* https://www.youtube.com/watch?v=j6yXNEgH3ds&t=1s. This would be consistent with Department of Justice policy as explained in the DOJ Justice Manual — Confidentiality and Media Contacts Policy Section 1-7.700(A), which states that before "holding a press conference or

making comments on a pending investigation regarding another DOJ component, the U.S. Attorney or Assistant Attorney General shall coordinate any comments, including written statements, with the affected component." And as described in a DOJ Inspector's General Report, the FBI Media Policy Guide provides that FBI public-affairs personnel are required to seek advance approval from DOJ's Office of Public Affairs for press conferences concerning investigations that may produce indictments. The report also describes the FBI's obligation to coordinate materials, quotations, and information intended for release during press conferences with DOJ's Office of Public Affairs. U.S. Dept. of Just., Off. of the Insp. Gen., *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* 21–23 (2018) (https://www.govinfo.gov/content/pkg/GOVPUB-J37-PURL-gpo93700/pdf/GOVPUB-J37-PURL-gpo93700.pdf).

**VI. The Court should impose sanctions and enter curative relief.**

This Court possesses broad authority to remedy violations of Rule 57.1 and to protect the integrity of these proceedings. It may enforce the Rule through its criminal-contempt power, as it did *in In re Morrissey*, which the Fourth Circuit affirmed. *In re Morrissey*, 168 F.3d 134 (4th Cir. 1999). Courts confronting prosecutorial press-conference statements have deployed "a wide range of sanctions or other remedies," including gag orders restraining further comment, measures permitting a defense response, and public admonishment of the offending officials — including, in one instance, "public admonishment of [the] United States Attorney General for certain extra-judicial statements." *United States v. Smith*, 985 F. Supp. 2d 506, 541–542 (S.D.N.Y. 2013).

Senator Lucas respectfully requests that the Court: (1) find that the Attorney General, the FBI Director, and the First Assistant U.S. Attorney violated Local Criminal Rule 57.1(C) through the statements identified above; (2) enter an order prohibiting further extrajudicial statements by counsel and associated law-enforcement personnel concerning Senator Lucas's guilt, the merits,

or the evidence, for the pendency of this case; (3) order such curative measures as the Court deems necessary to protect the venire, including an expanded voir dire; and (4) refer the violations for appropriate disciplinary or contempt proceedings consistent with *In re Morrissey*.

We respectfully request the Court consider the following additional remedies:

1) Order immediate removal the press conference from the DOJ website and make it unavailable to the public, while preserving copies for the purpose of further litigation;

2) Order the Department of Justice to preserve all communications (in electronic or any other format) on department or personal communications devices by all DOJ and FBI personnel (including any communications staff) in which such persons discussed the press conference and the content of any prepared remarks made by Attorney General Blanche, Director Patel, and First Assistant Stamos;

3) Order the Department of Justice to produce website analytics to show the number of visits to that page and/or the number of times the video was viewed on any DOJ website page that hosted the press conference video;

4) Order the Department of Justice to obtain analytics from its various social media accounts to determine the number of views of the press conference (and any related posts) from the:

    a. DOJ YouTube channel;
    b. DOJ X/Twitter account;
    c. Director Patel's "@FBIDirectorKash" X/Twitter account
    d. Attorney General Blanche's "@AGToddBlanche" X/Twitter account

5) Order the Department of Justice to file an affirmation that the court's order has been complied with and provide an explanation as to why the Department did not comply with any portion of the Court's order.

Senator Lucas reserves the right to make any further motion should evidence demonstrate the need for the imposition of additional remedies up to and including a dismissal of the Indictment or a significant delay in the trial to dissipate the taint of the unfair media publicity.

## **CONCLUSION**

For the foregoing reasons, Senator Lucas respectfully requests that the Court sanction Attorney General Blanche, FBI Director Patel and First United States Attorney Stamos for

violating Local Criminal Rule 57.1 of the Eastern District of Virginia Local Rules and order the remedies described above.

Respectfully submitted,

*/s/ Anthony Capozzolo*
Anthony Capozzolo (*pro hac*)
Lewis Baach Kaufmann Middlemiss PLLC
155 East 44th Street, 25th Floor
New York, NY 10017
Anthony.Capozzolo@lbkmlaw.com
212-826-7001

/s/ Eren Jon Alexander Gryskiewicz
Eren Jon Alexander Gryskiewicz
VSB # 85591
Lewis Baach Kaufmann Middlemiss PLLC
1050 K Street, NW, Suite 400
Washington, DC 20001
Jon.Gryskiewicz@lbkmlaw.com
202-833-8900

Ahmed Almudallal (*pro hac*)
Jeffrey Robinson (*pro hac*)
Lewis Baach Kaufmann Middlemiss PLLC
1050 K Street, NW, Suite 400
Washington, DC 20001
Ahmed.Almudallal@lbkmlaw.com
Jeffrey.Robinson@lbkmlaw.com
202-833-8900

Andrew M. Sacks
VSB # 20082
Sacks & Sacks, P.C.
Town Point Center
150 Boush Street, Suite
Norfolk, VA 23510
andrewsacks@lawfirmofsacksandsacks.com
757-623-2753

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of November, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ E. Jon Gryskiewicz*
Eren Jon Alexander Gryskiewicz
VSB # 85591
Lewis Baach Kaufmann Middlemiss PLLC
1050 K Street, NW, Suite 400
Washington, DC 20001
Jon.Gryskiewicz@lbkmlaw.com
202-833-8900