# EXHIBIT B

Beginning of Press Conference

**00:00:00 TODD BLANCHE**[1]

All right, good morning. This morning seven individuals were arrested or surrendered for allegedly participating in a large-scale RICO dru—drug trafficking and money laundering conspiracy. One of those individuals is the president pro tempore of the Virginia State Senate, Lillie Louise Lucas of Portsmouth, Virginia. A federal grand jury in the Eastern District of Virginia returned an indictment against all seven individuals on October 14th of this year. The defendants are currently in federal custody and, um, my understanding is there's initial appearance later this afternoon in federal court.

**00:00:44 TODD BLANCHE**

The remaining six defendants listed in the indictment include Senator Lucas's daughters, Lisa Lucas Burke and Teresa Lucas Lamb; Miss Lucas's grandson, Ryan Eichelberger; Prince Albert William Hudson III; Carlton Upton Jr.; and Tamika Johnson. Senator Lucas has been charged and indicted with five counts: racketeering conspiracy, conspiracy to distribute and possess with intent to distribute marijuana, conspiracy to launder money, conspiracy to commit honest services fraud, and maintaining a drug-involved premises.

**00:01:23 TODD BLANCHE**

The other counts listed in, in the indictment that she's not charged in include possession of a firearm in furtherance of a drug trafficking crime and wire fraud. All seven defendants are charged for their various roles they allegedly played in the Lucas enterprise. The indictment alleges that Senator Lucas approved and directed criminal activities and other activities to benefit the affairs of the Lucas enterprise, that she arranged for the acquisition and distribution of marijuana, that she supervised the laundering of marijuana proceeds, and that she used her political influence to demand and accept a bribe and attempted to influence Virginia legislation for the benefit of herself and her family.

**00:02:08 TODD BLANCHE**

As some folks know, since 1992, Senator Lucas has held a position of trust in the Virginia State Senate. Since 2020, she has served as the president pro tempore, where she has served as the presiding member of the state Senate in the absence of the lieutenant governor. At the same time, Senator Lucas has been the owner of Lucas Lodge LLC, Lucas Hospitality LLC, and The Cannabis Outlet, all three located in Portsmouth, Virginia.

**00:02:39 TODD BLANCHE**

The entire-- the Department of Justice intends to prove that Senator Lucas violated the trust of the people of Portsmouth and Chesapeake, Virginia, and of her state Senate colleagues. Through her elected office, Senator Lucas has been a public servant of the people of Virginia. Her first duty should've been looking out for her constituents before herself.

---

[1] Time stamps correspond with the video that can be viewed at: https://www.justice.gov/opa/video/attorney-general-fbi-director-announce-significant-law-enforcement-action?utm_source=chatgpt.com

**00:03:05 TODD BLANCHE**

But the charges listed in the indictment reflect the alleged behavior of a public servant who put her own financial interests before the people she was elected to serve. Whether you are a Democrat or a Republican, an elected official or an everyday citizen, nobody is above the law. If you commit crimes in violation of federal law, the Department of Justice will prosecute you.

**00:03:31 TODD BLANCHE**

We're here today because of facts and evidence which led to this investigation to begin many years ago, and facts and evidence that led to the grand jury to indict Senator Lucas and her alleged co-conspirators. And the facts and evidence will continue to guide our federal prosecutors in this case. I want to take a moment to thank the, the Federal Bureau of Investigation, the FBI, and the U.S.

**00:03:55 TODD BLANCHE**

Attorney's Office here in the Eastern District of Virginia, for the work they have done throughout this investigation and in bringing the charges here today. And with that, I will hand it over to Director Patel. Thank you.

**00:04:12 KASH PATEL**

Thank you, General. As alleged by the attorney general, Ms. Lucas, for the last nearly five years, accumulated nearly $5 million in ill-gotten gains through her criminal enterprise. Ms. Lucas served in a position of trust for nearly four decades, and served as the president pro tempore of the Senate for the Virginia State Senate for these last five, six years.

**00:04:35 KASH PATEL**

During that time, as alleged in the indictment, her and her six co-conspirators, instead of serving the public, as was her job, manufactured and created a criminal enterprise to illicitly enrich themselves by procuring, uh, sales in stores and divisions through the marijuana and CBD, um, enterprise. Ms. Lucas has many things to answer for on the allegation.

**00:04:48 KASH PATEL**

The purpose of her enterprise included trafficking large quantities of illegal marijuana, creating generational wealth for members and associates of her criminal enterprise, recycling drug proceeds to expand the operation that she launched and created, and steering marijuana licenses to entities in which members held financial interest.

**00:05:22 KASH PATEL**

During her time as Virginia State Senator, instead of enforcing the law, she was actually breaking the law, as alleged in the indictment, and then using her position of power and public trust to deflect and defend against her own criminal enterprise. Truly the epitome of hypocrisy for a public official.

**00:05:39 KASH PATEL**

Ms. Lucas, on January 24th 2022, posted on social media, "I'm a 78-year-old grandma who legalized pot and now has her own cannabis store, and I'm the last thing standing between the GOP and total control of Virginia. That's worth an RT," end quote. While she was posting these things, and the reason I highlighted it, is because during this time period, her and her

co-conspirators continued her criminal conspiracy to enrich themselves and break the public trust.

**00:06:10 KASH PATEL**

Thank you to the attorney general, thank you to the United States Attorney's Office here in Norfolk, Virginia, for making sure that we hold people accountable in positions of public trust and power, especially when they violate the law, as has been alleged here today. I wanna personally thank the men and women of the FBI, um, in the Norfolk division and also at headquarters in the FBI Richmond field office for their tireless work over these last years.

**00:06:34 KASH PATEL**

Putting together a public corruption case takes a lot of effort and manpower, and the prosecutors bravely and courageously waded through mountains of material, along with the FBI investigators and agents, to reach this decision point today and present this material to the grand jury, and the grand jury returned an indictment finding a finding of probable cause to charge Ms.

**00:06:54 KASH PATEL**

Lucas and her six co-conspirators. Thank you again to the men and women of the FBI Norfolk division, and thank you again to the Department of Justice and Attorney General Todd Blanche for your leadership.

**00:07:09 THEO STAMOS**

Good morning. My name is Theo Stamos. I'm the First Assistant United States Attorney for the Eastern District of Virginia. I want to thank Attorney General Blanche and Director Patel for their years-long support in supporting this prosecution and this investigation that culminates in today's charges being announced.

**00:07:29 THEO STAMOS**

The allegations in the indictment detail a criminal enterprise operating in plain sight. These charges, as alleged, reveal not just an abuse of public trust, but a reliance on the deference granted to a public official, an elected public official. These charges are not limited to one defendant, however.

**00:07:48 THEO STAMOS**

The charges include relatives and associates of that elected official who allegedly conspired to cash in on beneficial legislation, access, and influence. The charges are not limited to public corruption, but also involve public safety. We see time and again the dangers of the presence and use of firearms in conjunction with drug trafficking.

**00:08:12 THEO STAMOS**

As detailed in the indictment, both illegal narcotics and firearms were recovered by law enforcement during searches of the premises maintained by th- this enterprise. The charges also include the fraudulent acquisition of funds through a COVID-era loan program. This program was intended to assist small businesses impacted by the pandemic.

**00:08:33 THEO STAMOS**

Instead, one of the businesses operated by this enterprise was used to exploit that very program. I am grateful to the agents of the FBI and the prosecutors led by Eric Hurt and Brian Samuels here at EDVA, whose diligence and efforts and professionalism over the course of this very careful and thorough investigation have led to the charges we're announcing today.

**00:08:57 THEO STAMOS**

Thank you.

[Q&A with Reporters]

**00:09:00 TODD BLANCHE**

All right. Thank you. We'll take questions.

**00:09:02 REPORTER 1 (UNIDENTIFIED)**

Well, don't you think that this is well-

**00:09:04 TODD BLANCHE**

I mean, I was going to call on you, but you just started talking before I did. But please, no, go ahead. Please. That's okay. That's all right. No, go ahead.

**00:09:10 REPORTER 1 (UNIDENTIFIED)**

Um, her attorney is saying this is, uh, political payback. She's been the arch opponent to the president, and that this is payback for that, and then they were expecting, in his words, this circus to unfold. What is your response to that? What, what do you say to those that say this is just political payback?

**00:09:30 TODD BLANCHE**

Well, the, my initial response is there's actually a now public indictment that anybody in this country can read.

**00:09:37 TODD BLANCHE**

And the forty-five or so page indictment lays out a series of allegations that the grand jury heard. And, and that's, I, I've read the indictment. I read it this morning. Um, it's not, we, we don't do political paybacks. That's not ... This investigation has been going on long before, um, the US attorney, the first assistant started her job, long before I started my job here, and long before Director Patel, um, became the FBI director.

**00:10:00 TODD BLANCHE**

It started long before President Trump was reelected. So I don't ... I'm not gonna ... I, I can't get into a war of words with, with a attorney for a, a charged defendant. But just to unequivocally say it's completely false to say that this ... And again, don't trust me. Read the indictment. So yeah. In the back, you.

**00:10:18 REPORTER 2 (UNIDENTIFIED)**

Uh, can you say what year the investigation started, and what prompted the investigation? Was there some kind of a tip or anything like that?

**00:10:24 TODD BLANCHE**

I don't know what prompted it, and I don't know exactly when it started. The indictment alleges that the conduct started at least in 2019, up until the date of the filing of the indictment. So I, I don't have the information in front of me exactly when it started.

**00:10:38 TODD BLANCHE**

But suffice to say, it, it, it wasn't started by the three folks, by, by, by, by the Trump administration, or whatever allegations are, are now gonna come forward. Um, yes, go ahead.

**00:10:48 REPORTER 3 (UNIDENTIFIED)**

Um, so the, you know, my understanding with typical practice, DOJ doesn't usually release charges like this this close to an election. And even though Louise Lucas is not on the ballot, her daughter is. So, um, can you speak to the, uh, reason for the timing of, of these charges so close to an upcoming election?

**00:11:05 TODD BLANCHE**

Well, so I mean, I think you're referring to the, the 60-day or 90-day practice, which is not in writing. There's no ... That's not the part of the Justice Manual.

**00:11:14 TODD BLANCHE**

The Justice Manual speaks very clearly about what, um, the Department of Justice can and can't do. And we cannot, um, bring a charge if our purpose is improper. And there's nothing improper about this purpose. And so there's a lot of commentary about the 60-day rule. I think it's something that we, at, in leadership at the Department of Justice think about and take very seriously.

**00:11:35 TODD BLANCHE**

Um, the senator's not up for reelection. This is a long-running case. Um, as, as alleged in the indictment, it's a, a RICO conspiracy case. It's a narcotics case. Um, and, and so while the timing of, of an indictment is something that we have always thought about at the Department of Justice, the expected complaints about the timing of this indictment are not consistent with the Justice Manual or consistent with, with, the, the

**00:12:00 TODD BLANCHE**

What we're doing is very consistent with, with past practices. And so, um, I can't ... Uh, you know, people can criticize all they want, but the, it was time to bring the charges. The grand jury returned an indictment, and, and we made the arrests.

**00:12:13 REPORTER 4 (UNIDENTIFIED)**

Right. You've got, like, some alleged covert acts as recently as July. I mean, just sort of following up on that, is there any specific thing you can cite that says there is a real need for urgency, you know, even before the next two weeks You

**00:12:24 TODD BLANCHE**

mean to stop crimes from occurring?

**00:12:26 REPORTER 4 (UNIDENTIFIED)**

Was that... Yeah, that was the-

**00:12:27 TODD BLANCHE**

Is that what you're asking? Is there an urgency to stop crimes from being committed? Yes. Always.

**00:12:30 REPORTER 4 (UNIDENTIFIED)**

You're saying this is-

**00:12:32 TODD BLANCHE**

Absolutely ...

**00:12:33 REPORTER 4 (UNIDENTIFIED)**

an ongoing, so you're saying this is-

**00:12:33 TODD BLANCHE**

No, I mean, well, I mean, I know, I, I appreciate the question, but when you, when someone says, "Is there an urgency?" I hope everybody at the Department of Justice and every federal agent and cop always acts with urgency when there's crimes going on, and that doesn't mean that there are not instances in an investigation where you need to wait for any number of reasons.

**00:12:50 TODD BLANCHE**

But this, but, but yes, I mean, there, the, there's There's dates in the indictment dating back to 2018. And so this was a, there, there's been covert actions taken for many years and, and this was the, the, the right time to bring the charges. She's not up for election, right? So I, I just, to be clear, there's, there's decisions and processes in, in place at the department when we're bringing a case against a political official.

**00:13:17 TODD BLANCHE**

And, um, the, the question, the first question is, is this investigation proper? And the conclusion of that is yes. Is the timing proper? And the conclusion of that is yes. Um, so yes, I mean, the, we did need to bring it to an end. In the back.

**00:13:32 REPORTER 5 (UNIDENTIFIED)**

Uh, you mentioned that the indictment came down on the 14th. Can you tell me when Senator Lucas was notified that she, uh, had been indicted and needed to turn herself in?

**00:13:43 TODD BLANCHE**

Well, I hope she wasn't notified till this morning. It was unsealed, I believe, today. So like, the, I mean, that's not in... That's quite usual that there's a, a couple days or a week or so in between the returning of a sealed indictment and es- especially if there's multiple defendants in the case, to make sure we can plan an arrest plan and make sure our agents are safe.

**00:14:02 TODD BLANCHE**

My understanding is, um, she surrendered this morning. I don't know exactly when her counsel would've been informed that the indictment was unsealed, but I would hope that it was, um, t- today. Go ahead.

**00:14:14 REPORTER 6 (UNIDENTIFIED)**

Um, two questions. One on topic, one off topic. Just real quick, I'm making sure. You are alleging that she was selling marijuana for recreational use before, um, it was legalized in Virginia. And secondly, on that point, Peter, it's very rare to have you, Director, um, Patel, and AG Blanche here announcing a case at a press conference. Um, this is a very different type of drug crime and, you know, with marijuana. This is a drug that the president has declassified. Can you explain why it's very important for you two to be standing here holding a press conference and announcing this case?

**00:14:51 TODD BLANCHE**

So, well, so what, what you described as what I've alleged is not, I, I think- The ... I mean, it's, it's much, it's mu- a lot more detailed and there's a lot more alleged in the RICO conspiracy than just legally selling marijuana. Indeed, if that was all that was the investigation uncovered, we would not be here.

**00:15:07 TODD BLANCHE**

And so this isn't about a, um, a citizen in Virginia, um, lawfully getting a license, lawfully opening a, a shop that sells lawfully manufactured marijuana under the state laws of Virginia. To the contrary, the indictment alleges something very, very different than that. So this isn't about us trying to, um, micromanage states' decisions about the marijuana laws.

**00:15:28 TODD BLANCHE**

And you're, you're right, we are going through a process with the, at the federal level with marijuana laws, but that's not what the RICO conspiracy alleges in the indictment. That's a very simplistic way to say it. And, and, um, and, and why, while we're here, I mean, I think, I think it's, it's my responsibility, um, and- Director Patel's responsibility to be open and transparent at the right times with, with all of you and with the American people about, uh, charges we're bringing.

**00:15:54 TODD BLANCHE**

She is a... She's been a member of the Senate in Virginia, I think since 1990 or so. Um, so, so there is something, there, there's been public reporting about this investigation for many months. And so we determined that it was appropriate to, to have this press conference today. We're not gonna continue to speak about the case.

**00:16:10 TODD BLANCHE**

We're keeping it to the, the charges as alleged in the indictment. But, um, I think the public has a right to, to hear from us at, at times like, at times like this. What you said you had off-topic, go ahead.

**00:16:21 REPORTER 6 (UNIDENTIFIED)**

I wonder as the 60, 90-day rule came up, um, I wanted to ask about the search of, uh, Ilhan, Representative Ilhan Omar's home and why, um, you know, you think that, uh, why the argument for how that complied with that rule. I know it's not written, but we also know as a defense attorney, um, before you also had criticisms of Jack Smith violating that rule. So I want to understand, um, how the Ilhan Omar search comported with the, um-

**00:16:50 TODD BLANCHE**

Well, so I, I... We don't talk about searches. Searches are covert, they're not overt. And yes, and, and this became, um, overt because of the circumstances around the search on, on Monday.

**00:17:01 TODD BLANCHE**

Um, but that is a covert operation. It's a search warrant. And, and when you... Any time you apply for a search warrant, one of the factors under the rules is why it needs to happen on a pur- pursuant to a search warrant and not a subpoena, and why it has to happen on that day and not some other day. And as the magistrate judge found, there, we needed to do it then.

**00:17:15 TODD BLANCHE**

Um, we're, we're not... Our comment, I don't know what, you know, uh, the, the, the congresswoman has made multiple public comments about it. I haven't. I said there's a law enforcement action. That's all I've said. So, and again, this does not violate the 60-day rule or whatever rule that's... It, it's, which is not even a rule, it's just a practice.

**00:17:38 TODD BLANCHE**

Um, uh, when we have to execute, um, a search warrant or an arrest if there's a crime that occurs, um, uh, we take into consideration the purpose and making sure the purpose is proper, which is what the justice manual requires. And, and that's what we did then and that's what we do in every case. Behind, yes.

**00:17:55 REPORTER 7 (UNIDENTIFIED)**

There's some concern with the consolidation of the Norfolk field office may hinder solving crimes like this in the future. Can you touch on, on that effort moving forward?

**00:18:04 TODD BLANCHE**

I don't, I have... That concern has not been raised to me, so I can't touch on it... Sorry, I don't, I just don't have an answer. I don't know if you [gesturing to THEO STAMOS]

**00:18:09 THEO STAMOS**

I think it's... The work of the FBI, I mean, the director can answer that question, but

**00:18:14 KASH PATEL**

it's fine. So the... What we always try to do is put more resources into the field. There will not be a reduction in manning when we combine the Richmond and Norfolk field offices. In, in fact, there'll actually be an increase. And what we did was we eliminated $4.5 million in administrative costs, and that $4.5 million is going right back into Norfolk to hire more agents, to hire more investigative analysts, and to buy more tech and kit so our agents can be in the field doing the work they need to do.

END OF PARTIAL TRANSCRIPT.